| ORLEANS PARISH SCHOOL BOARD | * | NO. 2025-C-0247 |
|---|---|---|
| | * | COURT OF APPEAL |
| VERSUS | | |
| | * | FOURTH CIRCUIT |
| THE CITY OF NEW ORLEANS AND NORMAN WHITE, IN HIS CAPACITY AS CHIEF FINANCIAL OFFICER FOR THE CITY OF NEW ORLEANS | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

**LOBRANO, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS.**

I respectfully concur in part and dissent in part. I concur with the majority's conclusion that the Orleans Parish School Board ("School Board") is entitled to the $10 million appropriation included in the 2025 Budget Ordinance. However, I dissent from the majority's refusal to enforce the full $20 million immediate payment obligation.

The record demonstrates that this financial obligation, which was structured into two equal installments, was presented as a defined and immediate commitment, formally accepted by the School Board, and partially executed by the City through appropriation, public affirmation, and performance. The first installment of the $20 million obligation was duly enacted by the City Council, signed by the Mayor, and clearly designated as a payment to the School Board, as per the Home Rule Charter. This $20 million obligation, though initially negotiated as part of the broader settlement framework, was integrated into the School Board's and City's budgetary process and treated as a separate, immediate financial commitment.

While the School Board seeks enforcement of the broader settlement agreement, I agree with the majority that the lack of a fully executed writing or appropriation precludes enforcement of that agreement under La. C.C. art. 3072.

My dissent is limited to the enforceability of a specific $20 million payment obligation negotiated within that broader agreement.

The record indicates that the $20 million obligation was treated by both parties as an immediate financial commitment. It was formally accepted by the School Board, incorporated into the City's budget process, publicly affirmed by City officials, and the first installment was appropriated and performed. These actions constituted a valid obligation and/or ratification under La. C.C. art. 1843.

For purposes of enforcement, the $20 million obligation is properly understood as indivisible as it was structured as two equal installments forming a unified obligation owed in full within the 2024-2025 fiscal year in which the first payment was due on December 31, 2024 and the second payment was due on April 1, 2025.   However, as to the broader settlement framework, this initial obligation is legally and functionally divisible. The record supports a clear distinction between the immediate $20 million payment and the more complex, longer-term policy provisions, such as multi-year programmatic funding and administrative fee reforms, which were reserved for further documentation.

Accordingly, I would enforce the $20 million obligation as a ratified and indivisible initial payment commitment, but divisible from the broader terms of the settlement agreement. This holding is grounded in the following statutory provisions and established Louisiana jurisprudence.

The enforceability of the $20 million obligation must rest on the following two distinct but complementary legal grounds: (1) divisibility and indivisibility under La. C.C. art. 1815 and (2) ratification under La. C.C. art. 1843.

First, while Civil Code article 1815 provides that an obligation is divisible "when the object of the performance is susceptible of division," the article makes clear that the obligation is indivisible "when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division."

La. C.C. art. 1815.  Although a sum of money is typically considered divisible by nature, a monetary obligation may be treated as indivisible by the parties' intent (*ex voluntate*) when structured as a unified, non-fragmented commitment. *See Berlier v. A.P. Green Indus., Inc.*, 01-1530, p. 14 (La. 4/3/02), 815 So.2d 39, 48 (La. 2002) (holding that a lump-sum monetary settlement was indivisible where the parties had clearly conditioned payment of the entire amount on the execution of a global release, and had not allocated partial obligations to individual defendants). *See also* Saul Litvinoff, *The Law of Obligations in the Louisiana Jurisprudence* 599 (1979).

In the case *sub judice*, the $20 million obligation was treated by both the School Board and the City as a single, cohesive initial two-installment commitment. One installment was fully performed and the second was scheduled within the same 2024-2025 fiscal year and never repudiated. This structure and performance confirm that the parties understood the obligation to be indivisible as between its two installments, even if distinct from other, longer-term elements of the broader settlement. The obligation was not conditional, speculative, or subject to further negotiation.  It was immediate, defined, and ratified in part through formal appropriation and execution.

At the same time, this $20 million obligation is divisible from the broader settlement terms, which addressed ongoing programmatic funding, revenue allocations, and policy changes. Unlike in *Berlier*, where the parties expressly conditioned a single lump-sum payment on a global release, the record here reflects a deliberate structural separation. Refusing to enforce the $20 million obligation would improperly conflate a clearly staged financial arrangement with the broader, unexecuted settlement framework, contrary to both the parties' conduct and the governing principles of budgetary performance in public law.

Second, under Civil Code article 1843, a contract made by a person having no authority to bind the principal for whom he purports to act may be ratified by the purported principal. Ratification may be express or tacit. La. C.C. art. 1843. In the case *sub judice*, the City's conduct, including the appropriation of the first $10 million installment of an indivisible $20 million obligation, public affirmation of the financial terms, and joint implementation efforts with the School Board, constitutes ratification of the full $20 million obligation. Louisiana courts have recognized that a governmental entity may ratify an unauthorized contract through the subsequent action or inaction of the governing authority upon being appraised of the facts. *See Louisiana Consumer's League, Inc. v. City of Baton Rouge*, 431 So.2d 35 (La. App. 1st Cir. 1983) (holding that the mayor's execution of an operating contract for a corporation, without the requisite authorization from the city-parish council, was ratified by the council's failure to immediately repudiate the contract and its adoption of a resolution permitting the corporation to continue business for two months). Whether the City Attorney reviewed or objected to the agreement has no bearing on the legal effect of the City's formal acts of appropriation, performance, and public acknowledgment of this discrete obligation.

The district court rulings send the wrong message to public institutions entrusted with the delivery of essential services. When a municipality formally appropriates and begins performance on a defined financial obligation to its school system, particularly one aimed at core educational operations, those commitments must be treated as binding. That duty exists not only in the context of litigation, but as part of a broader constitutional and fiscal responsibility to ensure continuity in public education. Public confidence in governance depends on the enforceability of such obligations.

Accordingly, I would affirm the enforceability of the first $10 million installment and enforce the second $10 million installment as part of a ratified,

indivisible obligation that was clearly accepted and initiated for performance. This conclusion does not preclude the School Board from asserting any remaining claims in the pending litigation. It simply gives effect to what the law, the facts, and responsible public administration require.